## Case No. 6,031.

### The HANNAH M. JOHNSON.

[Blatchf. Pr. Cas. 160.] [1]

District Court, S. D. New York. May, 1862.

FREIGHT—PROPERTY OF ENEMY—CONFISCATED CARGO.

The vessel having been restored, as belonging to loyal owners, and part of her cargo having been condemned as enemy property, captured on a voyage from New Orleans to New York during the war, the master of the vessel applied to be paid, out of the proceeds of the condemned cargo, the freight upon it for the voyage: *Held*, that the application must be denied.

In admiralty.

BETTS, District Judge. Portions of the cargo of the above vessel were condemned as prize by the court on the capture of the vessel and cargo. The vessel was acquitted and restored to the claimants, as belonging to loyal owners, and not having been employed by them in any unlawful acts against the government in withdrawing herself from the port of New Orleans and returning to her home port after the declaration of war by the seceded states against the United States. Portions of the cargo shipped on board by traders domiciled in New Orleans and transmitted to New York were condemned and forfeited as being enemy property. The proceeds of that property remain in the registry of the court undistributed; and the petitioner, the master of the vessel, applies in that capacity for payment of freight out of the fund earned on the transportation of such part of the cargo on the voyage from New Orleans to New York.

The petition rests upon the assumption that the acquittal of the vessel from condemnation as lawful prize necessarily admits also the legality of her employment in carrying the cargo, and her title to freight therefor. This is by no means a fact or a legal conclusion. The charges upon which the vessel and her lading were seized and tried were, that they belonged to the rebels, or, if neutral, had evaded the blockade of the port of New Orleans. The judgment of the court disaffirmed these charges, except in relation to that part of the cargo which was condemned as enemy property, and which was brought into this port. The vessel, in the transaction, did not act at all in the character of a

---

[1] [Reported by Samuel Blatchford, Esq.]

neutral. If she had been, in fact, of neutral ownership, she would not have been permitted, under the rules of the prize law, to go into an enemy port and freight herself there pendente lite with enemy property. Such property is subject to capture at sea, though found in a friendly vessel destined to another friendly port. Kent. Comm. 124; Hall. Int. Law, 471; Wheat. Mar. Capt. c. 3, arts. 9, 13. This property would not, therefore, be exempt from capture on board a neutral vessel, had it been innocently freighted by the shipper from one neutral port to another; and only on such condition would the carrier be entitled to recover freight from the captor for the carriage performed in its transportation. The undertaking of the master to transport the property from an enemy country was not, as to him, an innocent act. It was in aid of the commerce and trade of an enemy, and the rules of public law interdict as illegal all such transactions by subjects of a belligerent nation with those of its enemy. Wheat. Int. Law, 357; The Hoop, 1 C. Rob. Adm. 196.

The court restored the vessel on this capture, on the ground that taking her from the port after the commencement of the war and the imposition of the blockade was not a proceeding for the benefit of the enemy, but was a withdrawal of home property by loyal citizens in which matter the enemy had no beneficial interest. The principle in respect to enemy property laden in the vessel, and transported for the benefit of enemy owners, is entirely different. Not only is such property liable to confiscation, but the interference of the master, in aiding its conveyance from an enemy port for the benefit of its owners, is wrongful and illegal, and in violation of the rights of his government in the property, and of his own duties and obligations as a subject during war. This doctrine is declared and enforced most explicitly and inflexibly by the highest authorities in America and Europe. 1 Kent, Comm. 55, 66, 68; Wheat. Mar. Capt. 220; 3 Phillim. Int. Law, § 70; The Sally, 8 Cranch [12 U. S.] 382; The Rapid, Id. 155; Wheat. Int. Law, pt. 4, c. 1, arts. 9, 13; The Hoop, 1 C. Rob. Adm. 196. The petitioner is disqualified by his own act, in dereliction of his duties as an American citizen, in aiding and promoting the trade and commerce of the enemy, flagrante bello, from deriving any advantage against the government through his unlawful acts and agency. His application, therefore, to be allowed freight for the carriage of enemy property on the voyage in question, with knowledge of the character of the property and of the existence of the war, cannot be entertained. The motion must be denied.

[The proceedings upon the libel and further proofs are given in Cases Nos. 6,029a and 6,030.]